We'll hear argument next, Case 24-724, the Hain Celestial Group v. Palmquist. Ms. Harrington. Thank you, Mr. Chief Justice, and may it please the Court. The Fifth Circuit erred in holding that it was required to vacate the District Court's final judgment after determining that Whole Foods should have been dismissed. For nearly 200 years, this Court has instructed that even if a federal court makes a jurisdictional error at the inception of a case, a final judgment in that case should stand if the District Court had jurisdiction over the suit in the form it took at the time of final judgment. That is exactly what happened here, because the only parties left were completely diverse. Plaintiffs' primary argument is that Whole Foods was a party in the District Court through trial and to final judgment because the order dismissing it could have been, and eventually was, reversed on appeal. But if you accept that argument, that would wipe out the fraudulent joinder doctrine completely. In order to be a party in a suit, you have to be subject to the District Court's jurisdiction. But when a nominal defendant is dismissed as fraudulently joined, that defendant is never subject to the jurisdiction of the federal court. The whole reason a fraudulent joinder case is even removable in the first place is because the fraudulently joined defendant is not treated as a real defendant. So if you view that dismissed defendant as a party through final judgment based on the possibility of reversal on appeal, then there would never be jurisdiction in a fraudulent joinder case, because even if the dismissal was later determined to be correct, the non-diverse defendant would have been lurking through the whole case to final judgment. Instead, when a defendant is dismissed as fraudulently joined, it's as if they never got in the door to the federal court in the first place, and the case moves forward as a suit between completely diverse parties. Here, the Fifth Circuit's later conclusion that the District Court should not have dismissed whole foods didn't retroactively make whole foods a party all along. And because the only parties to the final judgment were completely diverse, many of this court's cases, including Caterpillar, instruct that that final judgment should be preserved. Finally, if this court harbors doubts that the District Court had jurisdiction to enter a final judgment, the decision in Newman Green makes clear that the final judgment should be preserved by dismissing whole foods now. Either way, the Fifth Circuit's decision should be vacated, and I welcome the court's questions. Can you think of a case where a jurisdictional defect was cured non-consensually, that the court imposed a dismissal rather than the party consenting, the plaintiff consenting to it? When Caterpillar, the original plaintiff who objected to removal, was not a party to the settlement that this court found cured the jurisdictional defect in that case. But I'd like to, if I can just address the concept of curing a jurisdictional defect, that is how this court has talked about it in cases like Caterpillar and Newman Green, and we picked up on that in the briefing. But when you're talking about fraudulent joinder, it might not even be the best framing, because when you're talking about fraudulent joinder, there isn't an erroneous assertion of jurisdiction ever in the way that there was in cases like Caterpillar. Because the non-diverse defendant is just treated as not a real party to the case, and there's never an assertion of federal jurisdiction over the claim against that non-diverse party. And so here the question is, if you should have remanded a case to the state court and you didn't, but there was no assertion of federal jurisdiction over claims over which there was no jurisdiction, what do you do? And when there's no prejudice... There is an inherent prejudice, and that's the thing that you're ignoring, which is this plaintiff wanted to be in state court. It sued two parties, your client and Whole Foods, all right? It wanted to litigate. It couldn't because someone that had a right to include Whole Foods was dismissed erroneously. It was deprived permanently of its opportunity, tactical opportunity, to try this in state court. Isn't that inherent prejudice? I don't think it is, Justice Sotomayor. Why? Well, so first of all, it has the right still to pursue its claims against Whole Foods. No, but it wanted to apportion liability between two whole clients. Now it can't do that. Well, it can't do that because it lost on the merits. But the point is that it had a tactical advantage that was erroneously deprived of. I don't think that's right, Justice Sotomayor. Being able to sue in state court isn't a tactical advantage. Oh, absolutely. I mean, we wouldn't have all the removal arguments that we encounter if it wasn't. Parties don't fight removal simply because they want to. They see tactical advantages in remaining in one forum versus another. Well, unless you're going to formally adopt a rule that state courts are always better for plaintiffs and federal courts are always better for defendants. No, the rule is very simply, this plaintiff filed in the forum it wanted. And it filed appropriately. It filed against a non-diverse defendant. It was entitled to stay in state court. And it wasn't required to drop a defendant that it didn't want to drop. It is true that the case did not go the way that the plaintiffs wanted, but that's not enough for prejudice. Well, yes, because what you're saying is it's prejudice to the court that you're looking at and not prejudice to the party affected. Not at all. To be prejudiced to a party, you need to have a material impairment to that party's ability to assert a claim or defend itself. I think we're going to have to stop there because I do think suing the people you want to sue in the forum you want to sue them is a material disadvantage. Do you think, Ms. Harrington, I'm kind of picking up on Justice Sotomayor's point. It's difficult for me to untangle here the problem of jurisdiction, which I kind of agree with you. I mean, if there wasn't a problem with diversity at the beginning and there was no problem with diversity at the end and for reasons of efficiency, I mean, Caterpillar would not preclude your position. But there is a sense of unfairness, I think, to the plaintiffs because they just never get the opportunity to appeal or to try to remedy this wrong unless, I mean, is it just your position they have to try to get an interlocutory appeal at removal and that's it? Otherwise, they just are out of luck? Well, I think if the dismissed non-diverse defendant were an indispensable party or somehow the absence of that defendant at the trial affected the outcome of the trial, then you might have an ability on appeal to get the judgment vacated and the whole thing sent back to state court. But here, the absence of whole food had literally no effect on the outcome of the trial. But just to kind of put then a finer point on it, yes, you're saying there just isn't an opportunity to appeal. In the same way, the defendant has a right of removal but can't appeal a remand. Right. Well, I mean, this court explained in Caterpillar that the way the rules are structured, it puts a premium on deciding very early in a removed case, whether it should be in state court or federal court, and it tolerates some sort of errors, if a case is remanded to state court, that decision is never reviewable on appeal, no matter how wrong it was. Ordinarily, a plaintiff has 30 days to object to a removal on non-jurisdictional grounds. And if there's some reason they could have objected and they didn't object in the 30 days, it's too bad. So it's never reviewable unless there's some sort of prejudice, like a necessary and indispensable party. Right. So it's not never reviewable, but you wouldn't correct it if you go all the way to final judgment and there was no jurisdictional problem through that time, unless the absence of that dismissed party somehow affected the outcome of the trial. Yes. What do we do about the fact that the problem here was created by your client through an improper removal? I mean, in terms of fairness, your hands aren't exactly clean here. And what do we do about lexicon, where it was two federal district courts, we weren't even talking about state court. And a judgment was entered and there was no argument that the judgment in one district court is better than a judgment in another district court. And we completely sent it back to start over because the plaintiff's choice of forum was denied. Well, it wasn't — I'll start with the second, if that's all right. Let's start with the first. Start with the first. Okay. I mean, it's not as if — there's no argument that it was a frivolous argument, right? The district court agreed with us. The Fifth Circuit reversed. We accept that. I'm not saying it was frivolous. I mean, Rule 11, my goodness, I would never accuse you of that. Thank you, Grant. However, however, however, the plaintiff's choice of forum was effectively denied through an improper removal by your client. And that's exactly the argument that was made in Caterpillar. And this Court said, the plaintiff says, look, if we let this happen, if we take an all's well that ends well approach, in the words of this Court — That was fixed by the time of final judgment in Caterpillar. Well, here it was, too, I think. But if I can just — if I can finish just the thought that they said, you know, it will reward defendants for improper removal and it will override the plaintiff's choice of forum. And the Court said those are very important considerations, but they are overridden when you have a final judgment by principles of efficiency, accountability — All right. Move on to the second one. And finality. So for Lexicon, the problem there was that the problem hadn't been carried by the time of final judgment. The district court that entered the judgment never had the authority to do that. But here, again, because the nondiverse defendant never really made it in the door to federal court, through the whole trial and at final judgment, there were only completely diverse parties. And so there is no lingering jurisdictional defect. There really never was a jurisdictional defect with this case in the district court. Well, I guess that's a question. You know, last year, we talked about 1367C in Royal Canin. And we talked about how 1367C says when you have a federal claim and a supplemental state claim, and the federal claims drop out, that 1367C contemplates that the state claims, just those, there is still discretionary jurisdiction over them. Now, it's obvious that for various good and prudential reasons, the Court should dismiss those a lot of the time, but not all of the time. The Court — you know, the Court still has jurisdiction, supplemental jurisdiction, over the state supplemental claims once the federal claims drop out. And the way Royal Canin talks about that is because the federal claims have not dropped out for good. They can reemerge on appeal. And because they're not gone for good, there remains jurisdiction over the state claims. And it seems to me there should be no different rule with respect to diversity, that even once one of the parties was dismissed, because that party still had the potential to get back into the suit and destroy complete diversity, in fact, the jurisdictional defect was not cured. So the difference there is that when you have a federal claim that is dismissed by the court, or, you know, somehow taken out of the case by the court, that is the federal court exercising jurisdiction over that claim. So that claim is in the case. When you have a non-diverse defendant dismissed as fraudulently joined, there is no exercise of jurisdiction over the claim between — from the plaintiffs to that non-diverse defendant, right? Because I think everyone agrees the district court doesn't have jurisdiction over the case if that claim is in the case. And so there's jurisdiction to determine jurisdiction always. And so the federal court says, I don't have jurisdiction over this defendant because it's not a real defendant, and it's out of the case, and therefore I have jurisdiction over what remains, which is state law claims between completely diverse parties. I think I'm missing it. In one case, the court says, I'm getting rid of these federal claims because you failed to state a claim, right? And in the other case, I'm getting rid of this party because the party's been fraudulently joined. And that produces a difference in outcomes such that there remains jurisdiction over the federal claims, but there doesn't remain jurisdiction over the remaining part — over the diversity suit? Yes, because in the former, there's a merits determination as to the claims. There's an exercise of jurisdiction over those federal claims. I mean, I get the idea that that's — I mean, that's true. It's like, why should that difference make a difference? In both cases, the thing that created the federal jurisdiction is gone. And the question is, does the federal court still have jurisdiction over what remains? And what Royal Canin says is, yes, because the thing that created federal jurisdiction can still come back. So it's the opposite here, right? The thing that would have destroyed federal jurisdiction — Correct. I got that. Right, but never gets in the door. I mean, fraudulent joinder is a little bit of a weird doctrine, right? Because the only reason you can bring a fraudulent joinder case to federal court is on this fiction that one of the defendants isn't actually a defendant in the case, because if it were, there wouldn't be jurisdiction. But Ms. Harrington, don't you have to be right about that in order to be able to rely on this argument? I mean, I think the problem is that, to the extent the district court was wrong about the fraudulent joinder, and that Whole Foods should have been in this case, then you do have a jurisdictional defect, which is non-diversity in a circumstance in which there should be — you have to have diversity in order to have federal jurisdiction. I don't know that you can just isolate that unless you're right. And the problem is you're not in this case. Right. So great question, and I think you're wrong about the implications. And so you either would view the dismissed non-diverse defendant as out of the case, not a party, or as continuing to be a party. My friends on the other side want to say that's still a party because it might be reversed on appeal. If that's true, you can never have jurisdiction in a fraudulent joinder case because that jurisdiction — You know, you could have a situation where, as you urged in this case, the party could actually do an interlocutory appeal and get the final question as to whether or not this person should have been a party. But my point is, even if the Fifth Circuit had gone our way and said, no, that — Whole Foods was correctly dismissed, there wouldn't have been jurisdiction over the final judgment because, under their view and under the view you're positing — I mean, I get the idea. It's a little bit of a conundrum. But if, in fact, you're right and there is a fraudulent joinder, doesn't that just get read back in to the situation that existed at final judgment? I don't think so. I mean, the Fifth Circuit's decision, with all due respect to them, they don't have a time machine. They can't go back and change what actually happened. No, but that's the Caterpillar situation. You would just concede at that point. I mean, you would cure it, right? So fine, fine. You know, Whole Foods was fraudulently joined and we could continue to go on. But because you win in this situation, you would cure it. No, but, I mean, that would be Neumann-Green. In Caterpillar, the non-diverse defendant had already — was already out of the case before final judgment was entered. I understand. But the idea is that some jurisdictional defects can be cured by the time we get to final judgment. And Caterpillar, the cure was the person was actually settled out of the case permanently. And so we don't worry about the fact that previously in the case there might have been a jurisdictional problem. What I'm saying is that same solution would seem to me to be the answer to the conundrum that you're talking about with Justice Kagan. I disagree, Justice Jackson. I think either a party is in a case or isn't in a case in the district court. No, I understand. And that creates the defect. And the question is, can that be cured? And in the situation you're positing, maybe. Because by the time you get to final judgment, then perhaps the plaintiff would agree to the defect in this way, or agree to the cure, and then we'd be fine. What I was saying is that if the Fifth Circuit had decided on appeal, that Whole Foods was correctly dismissed, that the fraudulent joinder ruling was correct, under the view you're positing, where Whole Foods was a party all along, there still wouldn't have been jurisdiction to enter final judgment. Because Whole Foods wouldn't have been a party until it was affirmed on appeal that their dismissal was correct. Ms. Harrington, I'm sorry, can we finish? No, go ahead. So you said at the beginning this would destroy fraudulent joinder doctrine. And I take it that the reasons is this conundrum that you're discussing. What about the incentives for people like your client who remove and then can't count on the fraudulent joinder dismissal? And then your client, would you want to remove if you thought you were at risk of investing all the resources and litigating the case to final judgment, and then potentially losing it on appeal? What would it do to the doctor just from a matter of litigation incentives? I think it creates strange incentives. But I'm not sure. I think defendants who think they have a will still remove. We assume good faith by parties. They're not going to assert a fraudulent joinder argument if they don't think it's valid. But it creates opportunity for a great deal of waste and violence to principles of finality and economy. Because nothing that happened in this case after the initial dismissal of Whole Foods involved any non-diverse party. There was two years of litigation. There was a trial. There was final judgment on the merits. All of that was among completely diverse parties. Whole Foods never got in the door. And so there was no reason to go back and say, well, we're just going to get rid of all of that and have a do-over. Because the absence of Whole Foods didn't have any effect on the outcome. It didn't have any effect on what happened at trial. The plaintiffs could have sought third-party discovery against Whole Foods. They didn't. Whole Foods was barely even mentioned in the trial. But can we go back to Justice Sotomayor's point about prejudice? So is it your view that there would be no potentially preclusive effect of this judgment on a subsequent determination or a subsequent trial related to Whole Foods? I mean, is your client not going to argue that Haines should lose that as well? I mean, if they — if — that Haines should lose — Or that Whole Foods should lose. I mean, I sense a potential prejudice from having to try this twice when initially the plaintiff here wanted to bring one lawsuit against both of these defendants. And so I guess I'm asking, if we say it's okay to affirm the judgment with respect to this one defendant and it's fine because the plaintiff can go on to sue Whole Foods, is there any possibility of some kind of preclusion in the Whole Foods lawsuit? So that's a question for state law that would need to be decided by the state court, I think. But even if there were, even if the state court did say, yes, this determination that was made in the district court has preclusive effect with respect to the claims against Whole Foods, that wouldn't be prejudice. Why not? That's just the ordinary consequence of losing at trial, right? I mean, there's nothing about the absence of — But we wanted to have one trial where both of these defendants were in there, and perhaps we wouldn't have lost under those circumstances. But nothing about the absence of Whole Foods or the federal forum affected the outcome of the case. The district court judge, after hearing the plaintiff's entire case, said, you didn't present evidence of causation. The absence of Whole Foods had no effect on that. The federal forum had no effect on that. That's just a failure of proof by the plaintiffs. And so if it were determined in the state courts that having to live with that, with a preclusion effect, that's not prejudice, that's just what happens. So is your rule turning on the actual judgment, whether it's about causation or whatnot? I mean, in a different case, let's say there was some implication of having another defendant in it, would you have a different rule as to whether or not the judgment should be upheld? Yes. If the absence of the dismissed defendant affects the outcome of the case, then I think the plaintiff would have a good argument that the judgment should be vacated and they should have a chance to start over in state court. But nothing like that happened here. They're really — the trial would have been exactly the same if Whole Foods has been there, and the outcome also would have been the same. But to pick up on one aspect of your question — Are you saying sometimes vacature is the appropriate remedy? If the absence of the dismissed defendant affected the outcome of the case or material — Apportioning liability, things like that? I mean, it could be with apportioning liability, but here there was no liability. I understand that. So you're saying your rule is really case-specific. So as with any prejudice determination, it will depend on what actually happened in the case. My friends on the other side want you to think about prejudice sort of in the abstract with hypothetical parties, but you really have to look at whether there was prejudice to the parties in this case, in these circumstances. So there usually will be prejudice or often prejudice, but just not here. There could be prejudice. I mean, that would depend on the circumstances, you know. But then it's not really about jurisdiction, is it? No, I mean — If it's turning on prejudice, I mean, the court — normally we don't think of whether the court had jurisdiction or not as dependent on whether there's prejudice to a party. Right. I'm talking — right, that's — the question is like, what is the remedy for the fact that you should have been able to have these two defendants together, right? The automatic remedy when you should have been able to sue two defendants together, one was improperly dismissed, and you didn't, is not automatically to vacate the judgment for the other defendant. You would only do that if the absence of the dismissed defendant affected the outcome, affected that judgment. But where it didn't, there's no reason to vacate that. And it is a pretty awkward rule to say that a jurisdictional defect, a remedy for it, depends upon prejudice in a particular showing. And again, we didn't do that in lexicon. I'll try one more time. There's no jurisdictional defect here once you get rid of the dismissed defendant. I understand your point. And so the question is, if you — basically, if the error was separating these claims against the two different defendants, what is the remedy for that error? That's really what the error was here. But you're treating it as, oh, we separated two defendants improperly. But in fact, from the plaintiff's point of view, what was — the thing that went wrong is that the plaintiff is the master of her complaint. She clearly structured a suit in order to bring it in state court. That was why she joined these two parties perfectly legitimately in order to have the suit in state court rather than in federal court where it was. And the effect of this district court misjudgment was not that two parties were separated. It's that the suit was tried in the wrong place from the plaintiff's point of view. And the plaintiff's point of view is the thing that should matter, because the plaintiff is master of her complaint. So I'll say a couple of things. It is true that the plaintiff is the master of her complaint, but that isn't a jurisdictional principle. That's sort of an overarching principle that guides federal — It's an overarching principle of how litigation should work. And it also has a kind of equitable dimension, that you've deprived the plaintiff of an opportunity to do what our civil procedure system generally allows. Yes. And exactly that argument was made in Caterpillar. And this Court said, that's an important principle, this — the plaintiff is the master of her complaint. But when you litigate a case to final judgment, it can be overridden by other principles of finality, efficiency, and economy. Right. Now, that was a case where the Court was absolutely certain that there was jurisdiction at the — at the time of final judgment. And here, there remains a question about whether there was jurisdiction at the time of final judgment — No question in my mind. — given the fact that the — that Whole Foods is lurking out there, ready to come back into the case if the district court got it wrong, as it did. Well, again, I'd say, to be a party in a case, you have to be under the — the district court has to exercise jurisdiction against you. And that never happened here. The district court made a prediction about what it thought state courts would do with the claims against Whole Foods, and said, I don't think there's a valid claim, and dismissed. Right? The plaintiffs can, in most cases, can then go pursue those claims in the state court if they wish. There's never any exercise of federal jurisdiction over that non-diverse defendant. And so then the whole case proceeds between completely diverse parties, including the entry of final judgment. So I don't think there's a real question about whether — the way this court has phrased it is whether the district court would have had jurisdiction over the case in the form it took at the time of final judgment. And there's really no question that that certainly was — was true here, that the district court had jurisdiction over the case in the form it took at final judgment. And again, if you view — view Whole Foods as having lurked through the case the whole time, then you really couldn't ever have fraudulent joint or removal, because there would never be jurisdiction to enter final judgment until the dismissal of that non-diverse defendant was later affirmed on appeal. Couldn't it be affirmed interlocutorily? Those kinds of judgments can be appealed in the middle of the case, correct? So they could. And you could — you know, if a plaintiff were worried that the dismissed defendant was somehow indispensable, they could seek a Rule 54B judgment or 1292B. But — But in that case, we wouldn't have to wait until the final judgment. We would get the answer as to whether or not the parties should be — should have been in there, and then the case would go forward. Yes, but you shouldn't — but requiring that in every fraudulent joint or case should not be the rule, in the same way that this Court in Caterpillar said we shouldn't require 1292B. I mean, we're not requiring it. It's just the parties are taking risks. Everybody's strategic here and making determinations about what is worth pursuing. You can have an interlocutor appeal. You cannot. You can wait. You cannot. But you're taking a risk that when you get to the end of the case, this jurisdictional defect will be realized and not cured, and you might suffer. If you adopt that approach, it would slow down every fraudulent joint or removal, and it might not actually solve the problem for the reasons given in our brief. I see the red lights on. Thank you, counsel. Anything further? Thank you. Mr. Post. Mr. Chief Justice, and may it please the Court. The question in this case is whether a federal court can acquire jurisdiction through error. If the case is decided according to the first principles of federal jurisdiction and the rationale of Royal Canin, to which the Court has referred this morning, the answer must be no. Federal courts are courts of limited jurisdiction, and the obligation to respect those limits is inflexible and without exception. The Court should not make an exception to the party-neutral rules that Congress has established for a case where a plaintiff maintained a valid state law claim against a nondiverse defendant through final judgment. Appeals to judicial efficiency have never been a reason to ignore the limited jurisdiction of the federal courts, and Caterpillar confirms that conclusion. It held that vacatur was not required only because the lack of complete diversity in that case was cured by the voluntary dismissal of the nondiverse defendant prior to final judgment, and that cure was reinforced by a Rule 54B partial final judgment that eliminated any jurisdictional uncertainty. Here, unlike in Caterpillar, the defect was never cured. That's the crux of this case. The Court should hold that an erroneous and involuntary dismissal of a nondiverse defendant does not create complete diversity because jurisdiction cannot be created through error. Finally, contrary to the argument that you've heard this morning, that proposition is perfectly consistent with the Court's fraudulent adjoint or jurisprudence. An interlocutory ruling that a party was fraudulently adjoined is effective while it remains in force, and the citizenship of that party is disregarded. But the party remains in the case, and the ruling, like any other pretrial ruling, remains subject to appellate review. If the ruling is upheld, then complete diversity is intact. But if it is reversed, then complete diversity is lacking and the judgment must be vacated. That's exactly the same as the core rationale of Royal Canin earlier this year, and it should control this case. I welcome the Court's questions. This would be a lot cleaner case if you had appealed the dismissal. Why didn't you? Your Honor, because the Court held in Caterpillar that there's no obligation to seek immediate review to preserve the right to an ultimate appeal on this issue. This is no different than any other threshold jurisdictional issue that arises and is preserved. This most frequently arises when a defendant wants to preserve an objection, for example, to Article III jurisdiction based on a standing objection. Those types of issues are frequently preserved early in litigation and are not ultimately vindicated until the end of the for a final judgment. That's sort of inherent in the doctrine that appellate review is ordinarily deferred until after final judgment under this Court's merger rule. District courts still retain the power to certify without the request of either party. Absolutely. So if any court is worried, they could enter a 54B certification. That's absolutely right, Your Honor. And in fact, I would point out that in 1980 in the Curtis Wright decision, this Court held that one of the guiding principles for district courts is the consideration of judicial administrative interest. That's what should guide a court in making that determination. And so if there's concerns about uncertainty about jurisdiction and potential waste, Rule 54B is the resolution for that sort of concern. District court could have pursued it here. The defendants could have but they elected not to do so. And your position was that you were standing on Caterpillar? I mean, Caterpillar does not answer this question clearly one way or another. So I mean, that makes it seem like your choice was to take a wait-and-see approach and then decide whether you like the result or not before you chose to fight it. That's not correct, Your Honor. I do want to confirm the principal point that the Court made. Caterpillar does not resolve this question as the petitioners acknowledge in their reply brief because it recognizes that if the jurisdictional defect remains uncured at final judgment, vacature is required. It doesn't. I mean, let's see, there are different ways to, but it doesn't resolve the question. So my point for the purposes of this question is solely that you're saying that you were standing on a case that doesn't squarely resolve the question and that's why you didn't try to seek an interlocutory appeal? Not, Your Honor, with respect to the preservation holding. Caterpillar does squarely resolve the question of preservation, that a party that raises the objection to jurisdiction has done all that is necessary to preserve the right to an ultimate appeal. Again, that's a party-neutral rule that flows from the final judgment rule. It's just the same principle that applies when a defendant objects to jurisdiction at the outset of the case. There's not an obligation to take an immediate appeal in order to vindicate that case. What do you think that, oh, I was just going to say, your question is why didn't you appeal? Right, but that, I mean, whatever, we'll just let that go. What is your answer to the questions about preclusion that Justice Jackson was asking you earlier? What would happen in state court? Do you think you would be barred by non-mutual issue preclusion from relitigating some of these issues? That is a controversial question. We certainly would not concede that preclusion would lie here. I would argue that there may be exceptions under state law, both because of the nature of the jurisdictional ruling in the first instance and because there could be differences in sufficiency evaluation under state law as opposed to federal law. But all of that presupposes that the jurisdictional problem could be cured and that that judgment could actually have any substance on the merits, which I think is incorrect. I do want to speak directly to the Court's question. The reason that there was not an immediate appeal taken was not only that the plaintiffs were relying on their right to after final judgment. But as a practical matter in litigation, litigants make their best arguments, they preserve their positions, they respect the rulings, and they move forward. And our clients move forward to litigate the case on the merits as best they could with respect for the district court's ruling. What about prejudice, though? You know, one of the reasons why I brought up preclusion was because there was an argument that given that Whole Foods was not actually part of this litigation, that you are not prejudiced by having to sue them in state court separately. Well, Your Honor, of course, prejudice is not a material consideration where we're dealing with the first principles of limited federal jurisdiction. And so I think principally the plaintiffs do not have to demonstrate prejudice to satisfy the Court that there's a lack of jurisdiction in this instance. But it certainly is the case that the plaintiff as the Court has indicated is the master of the complaint. And that is a jurisdictional principle, contrary to what counsel said. The right of the plaintiff to configure the case for purposes of litigation is a function of the congressional scheme that makes jurisdiction turn on the claims and the parties. I don't think you're answering Justice Jackson's question, though. I have the same one, right? Aren't you asking whether the judgment was, yeah, I mean, how did it hurt your client that Whole Foods wasn't in the case when, you know, your friend on the other side is pointing out that nothing in the case turned on Whole Foods or its evidence? Put aside the jurisdictional point for now. And I appreciate the point. My point was simply to be that the lack of the state forum in a single proceeding in which both defendants could be brought within the same proceeding is itself prejudice. So I take it it's a very abstract prejudice in the same way that your friend on the other side said it's abstract. It didn't really affect the outcome. You're not saying the outcome would have been different. You can't point to anything like that. That's the jurisdictional principle. That's right, Your Honor. With respect to practical prejudice, as a practical matter of the way this case was litigated, with Whole Foods out of the case, there was no opportunity for the plaintiffs to develop the evidence that they would have developed about the role of Whole Foods in actually making express misrepresentations about the quality of the baby food at issue. And so it is true that as the case was tried, it was tried solely based on the quality of the product. But that was an artifact of the erroneous ruling, an erroneous irregress made by the district court about the content of state law that should have been a determination made by the state courts consistent with the congressional scheme. I'm sorry. You lost on causation, meaning I thought you lost on first principle, which is that even if there was toxic substances, they didn't cause this condition. Your Honor, there's a dispute about the accuracy of that ruling. That's correct. The district court found that there was a failure of proof of causation. Well, you lost that on appeals, so it's gone. We did not, Your Honor. That question was never decided by the Fifth Circuit. It would remain to be decided. I see. And our position is that the proof that was put forward at trial is sufficient. Okay, counsel, you're answered. Thank you, Your Honor. Well, you made a reference to the possibility that the standard for judgment as a matter of law might be different in the Texas courts than in the federal courts. Or did I misunderstand what you said? Your Honor, I think that's a possibility. I think if it were necessary to litigate the preclusion question in a state court proceeding, then it would be necessary to determine whether the legal rule that was applied in the federal courts, if in fact one assumed the Fifth Circuit upheld judgment as a matter of law, was applying the same standard for sufficiency that the state courts would apply. That's not a question that the parties have developed, because to this point, we've clashed on the merits only under the Fifth Circuit's precedent. I want to pick up the point that Justice Kagan made regarding Royal Canin and Section 1367 c. 3, because it's not a point that was explored in the briefing, but I do think it is powerful. Because the holding of Royal Canin, of course, is that a plaintiff's voluntary amendment that abandons a federal question claim completely deprives the court of original jurisdiction, and therefore deprives it of discretion to entertain a supplemental jurisdiction claim under state law claims. The necessary premise of that is that where 1367. 3 states that otherwise a federal court that dismisses the original jurisdiction claim may retain jurisdiction over the state law claims is that if the federal court has involuntarily dismissed the claim, it doesn't lose jurisdictional significance. That claim, although dismissed in an interlocutory posture, retains its jurisdictional significance for purposes of original jurisdiction. So I heard Ms. Harrington make two points with respect to that point. One was that it's different when the district court does it on the merits and has asserted jurisdiction over the suit when that decision happens. And the second is that if we applied the same rule here, we would have a real problem with any fraudulent joinder case, because you could never say that at the time of judgment there was in fact jurisdiction. Your Honor, if I may, I'll speak to the second point first. And I think that that's just a false understanding of fraudulent joinder doctrine, and there's no principle way to draw the distinction that the petitioners are trying to draw. And I would call the court's attention to two of your decisions that I think illustrate the point that I've made, which is that when a party is found to have been fraudulently joined by a district court, its citizenship is disregarded, but it doesn't cease to be a party to the litigation. That remains subject to appellate review. So two cases the court should consider. The first is the kettle hockey case, which is discussed in our brief. That's one of the cases from the voluntary, involuntary line of authority. And in that case, the state court not only found that there was no viable claim against the nondiverse defendant, but under state procedure, ordered a involuntary non-suit, and so separated formally that party from the litigation. And this court held, when the question reached this court, that that involuntary non-suit did not so terminate the party's significance from the case that it resolved a jurisdictional issue. The second case that I would call to the court's attention, which isn't discussed in the briefing, is MECOM v. Fitzsimmons. It's 284 U.S. 183, a 1931 decision by this court, in which this court reversed a fraudulent rejoinder ruling. And the necessary premise of that is that that party remained in the case until it arrived here for this court to reverse the ruling. The party didn't disappear immediately. As a practical matter, Whole Foods has been in this case from day one. They are here today. Their counsel is sitting here at counsel table because they are a party to this litigation. You can't pretend otherwise. That was one of Justice Kagan's points. Was there another one? Your Honor, I think the first point was that there's a distinction to be drawn between a merits-based disposition and a jurisdictional disposition. I don't know that that's a stable distinction in principle, but certainly when you're dealing with fraudulent rejoinder, for which the question is whether there's a reasonable basis for the claim, the substance of the analysis merges. And so a federal district court's interlocutory determination to dismiss a federal question claim has the same consequent as its interlocutory determination that there's fraudulent rejoinder. The party still remains in the litigation subject to appellate review, and therefore the jurisdictional issue is not cured. Thank you, counsel. Thank you, Your Honor. Rebuttal, Ms. Harrington. Thank you, Mr. Chief Justice. Just five quick points. First, on the point that we know that Whole Foods is still a party because they're sitting here with us at counsel table, as they are, there are other circumstances in which a person or a company can be a party to an appeal without having been a party at the trial. So for example, if a plaintiff asked for permission to add another defendant under Rule 20 and the district court says no, the plaintiff can appeal that denial, an appeal from final judgment, and the person who was never added, the defendant, would be a party to the appeal, but never having been a party to the district court, and there are other examples. So I would ask you to reject that argument. To circle back to Justice Gorsuch's question about including prejudice in a jurisdictional inquiry, I just want to try to clarify, it's not that you would think about prejudice in deciding whether there was or wasn't jurisdiction. It's more that you would say there was jurisdiction, and then you ask, did the absence of the dismissed party affect the outcome? And there's where the prejudice comes in. The third point is just on whether the absence of whole foods affected the outcome. My friend said, well, we would have developed all this evidence about what whole foods said. As Justice Sotomayor said, they lost on causation. It doesn't matter what whole foods said or didn't say, if you can't prove causation, you can't prove any of your claims in this case. On the master of the complaint principle being jurisdictional, this court rejected that view implicitly in Caterpillar. They said it's an important principle, but it gives way to principles of finality and economy. And on the final point, I want to say it's not just me saying that things change after final judgment is entered. That's also written into Section 28 U.S.C. 1447C, where Congress has said if you realize district court before you enter a final judgment that you lack jurisdiction, you should send it back. But implicitly, then things change after final judgment. And also this court's case in Newman Green recognized that courts of appeals can dismiss a lingering non-diverse party after final judgment in order to preserve final judgment. The court of appeals clearly at least had that authority here, and its ruling that it was required to vacate the final judgment was plainly incorrect, and so we would ask the court to reverse. Thank you. Thank you, counsel. The case is submitted.